**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TROY DAVID BLANKENSHIP, | No. 2:14-CV-0312-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits in September 2010.  In the application, plaintiff claims that disability began on July 18, 2010.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 26, 2012, before Administrative Law Judge ("ALJ") Daniel G. Heely.   In a July 10, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): severe dermatitis of the bilateral upper extremities;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform a wide range of medium work; the claimant can lift/carry 50 pounds occasionally and 25 pounds occasionally; the claimant can stand/walk/sit for six hours in an eight-hour day; the claimant should avoid concentrated exposure to environmental irritants; and
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing his past relevant work as a forklift operator and store laborer.

After the Appeals Council declined review on December 6, 2013, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

1   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

2   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

3   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

4   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

5   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

6   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

7   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

8   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

9   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

10  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

11  Cir. 1988).

12

13                          **III.  DISCUSSION**

14          In his motion for summary judgment, plaintiff argues: (1) the ALJ erred by failing

15  to consider whether plaintiff's impairment equals Listing 8.05 governing skin conditions or

16  further develop the record in this regard; (2) the ALJ erred by rejecting the opinions of treating

17  physician Dr. Basi and failing to account for flare-ups in determining plaintiff's residual

18  functional capacity; and (3) the ALJ erred by failing to account for flare-ups in determining

19  plaintiff's credibility.

20          A.      **Consideration of Listing 8.05**

21          The Social Security Regulations "Listing of Impairments" is comprised of

22  impairments to fifteen categories of body systems that are severe enough to preclude a person

23  from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

24  C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

25  irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

26  the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

1    1985).

2            Regarding plaintiff's skin condition, the ALJ summarized the evidence as follows:

3    The medical evidence of record reflects a longitudinal history of treatment
     for severe dermatitis.  For example, the claimant was treated on an
4    outpatient basis for an acute outbreak of eczema in July 2010 with
     prescriptions for Lidex, Prednisone, and Benadryl (Ex. 3F/3).
5
     In September 2010, he was noted to have had a limited response to
6    Prednisone and ultimately needed inpatient care in October 2010 for
     severe dermatitis and secondary skin cellulitis (Exs. 9F/5 and 5F/4).  It
7    was thought he had cellulitis secondary to chronic eczema.  He was
     admitted and placed on empiric antibiotics, corticosteroids, and Atarax
8    (Ex. 5F/4).  Fortunately, his condition improved quickly, and he was
     discharged after only a few days on a tapering dose of Prednisone and
9    Keflex (Ex 5F/21).

10   On follow-up as an outpatient in October 2010 and November 2010,
     continued improvement was reported in his symptoms (Exs. 8F and 9F/9).
11
     In December 2010, he was noted the have "hands only" plaques (Ex.
12   9F/2).

13   In March 2011, his eczema was described as "much improved" (Ex.
     13F/28).
14
     In April 2011, one week later, he was seen in follow-up for eczema, at
15   which time his Prednisone was increased due to an acute worsening of his
     condition (Ex. 13F/27).
16
     In September 2011, he was treated for symptoms of eczema, but by
17   November 2011, his eczema was described as generally improved off
     Prednisone (Ex. 13F/11-12).
18
     In December 2011, the claimant was seen for clinical cellulitis, but he had
19   not attempted home care, and it was felt he was an appropriate candidate
     for a course of outpatient Bactrim and Keflex (Ex. 14F/4).  Hence, the
20   claimant has generally received outpatient care for a chronic skin disorder
     with episodic flares in his symptoms.
21

22   As to the listings, the ALJ concluded: "The record does not establish dermatitis with extensive

23   skin lesions that have persisted for at least three months despite continuing treatment as

24   prescribed as required under Listing 8.05."

25   / / /

26   / / /

4

1    Plaintiff argues:

2         The ALJ provided minimal explanation for the finding that Mr.
     Blankenship does not meet listing 8.05 and no explanation for why he
3    failed to equal the listing.  Because Mr. Blankenship presented evidence at
     the hearing level that he meets or equals the listing, the ALJ committed
4    reversible error in failing to address the listing, or obtain a medical expert
     ("ME") testimony on the matter.

5

6    Plaintiff also contends:

7         Moreover, the ALJ erred in failing to obtain an ME because
     additional evidence was received that could change the State agency
8    medical finding regarding equivalence.  Originally, state agency physician,
     Dr. Haroun, determined Plaintiff did not have a severe medically
9    determinable impairment.  Tr. 90.  Dr. Danufsky then reviewed evidence
     up to December 2010.  Dr. Danufsky determined that "skin lesions
10   anticipated to improve with treatment and not expected to limit
     manipulative activities for 12 months.  No change in decision."  Tr. 91.
11   As further discussed below, the record shows Mr. Blankenship has
     continued to require treatment for ongoing psoriasis, flareups, and lesions
12   on his hands well over 12 months after 2010, when the last records were
     reviewed. . . .

13

14   Additionally, plaintiff argues that the Listings make clear that "manipulative limitations can be

15   intermittent and still meet the 12-month requirement to be a severe impairment."

16        The court disagrees with plaintiff's characterization of the ALJ's Listings analysis

17   as "minimal."  As discussed above, the ALJ provided a detailed summary of the evidence of

18   record relating to plaintiff's skin condition and treatment.  The ALJ then concluded that such

19   evidence did not establish the requirements of the Listings because plaintiff's skin condition was

20   controlled with medication.  See Warre v. Comm'r of Soc Sec. Admin., 439 F. 3d 1001, 1006

21   (9th Cir. 2006) (noting that a condition that can be controlled or corrected by medication does not

22   satisfy the Listings).[1]

23   / / /

24   / / /

25   ────────────────

26   [1]    Under the regulations, the same rule applies in determining whether a condition
     medically equals a listing-level impairment.  See 20 C.F.R. pt. 404, Subpt. P., App. 1, § 8.00.

5

1    　　　　The court also finds that the ALJ's analysis is supported by substantial evidence

2    of record.  Specifically, plaintiff's treatment records show that his skin condition was controlled

3    with medication.  The court accepts plaintiff's lengthy summary of the medical record reflecting

4    that plaintiff received ongoing treatment for his skin condition. As the ALJ found, however, the

5    evidence does not show extensive and persistent skin lesions causing serious limitations.  In

6    particular, the evidence shows that plaintiff's skin condition was well-controlled on medication.[2]

7    Defendant accurately observes: "The fact that Plaintiff received treatment for his psoriasis does

8    not elevate his condition to a listing-level, i.e., presumptively disabling, impairment, and nothing

9    in Plaintiff's brief shows otherwise."

10   　　　　Finally, the court does not agree with plaintiff that the ALJ failed to develop the

11   record by consulting a medical expert.  The duty to develop the record arises when there is

12   insufficient evidence, see Lewis v. Apfel, 236 F.3d 503 (9th Cir. 2001), which is not the case

13   here given the ample evidence showing that plaintiff's skin condition, including periodic flare-

14   ups, is controlled with medication.

15   　　　**B.**　　**Dr. Basi's Opinions**

16   　　　　The weight given to medical opinions depends in part on whether they are

17   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

18   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

19   professional, who has a greater opportunity to know and observe the patient as an individual,

20   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

21   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

22   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

23   (9th Cir. 1990).

24

25   　　　[2]　　Regarding flare-ups, the regulations permit the ALJ to consider how quickly flare-
ups resolve and the claimant's response to medication.  See 20 C.F.R. pt. 404, Subpt. P., App. 1,
26   § 8.00.

1        In addition to considering its source, to evaluate whether the Commissioner

2  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4  uncontradicted opinion of a treating or examining medical professional only for "clear and

5  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7  by an examining professional's opinion which is supported by different independent clinical

8  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16  without other evidence, is insufficient to reject the opinion of a treating or examining

17  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20  see also Magallanes, 881 F.2d at 751.

21        As to Dr. Basi, the ALJ stated:

22        Little weight is given to the opinion of Marik Basi, M.D., dated May 21,
          2012, to the extent it would appear to preclude sustained work activity at a
23        medium level of exertion. . . (Ex. 16F).  Dr. Basi treated the claimant for
          one month before offering the assessment and he appears to agree the
24        claimant could sit for at least six hours in an eight-hour day and stand
          and/or walk for at least six hours in an eight-hour day.  He also appears to
25        agree the claimant is able to lift and carry up to 20 pounds frequently and
          50 pounds occasionally, which is quite similar to the residual functional
26        capacity defined herein, and reflects the claimant has the capacity to use

7

1           his hands up to 66 percent of the workday to lift and carry.  In contrast, Dr.
        Basi limited handling and fingering to only 30 percent of the workday.
2           The doctor did not explain the apparent inconsistency in allowing frequent
        use of the hands for lifting and carrying but only occasional use of the
3           hands for handling and fingering. . . .

4   Plaintiff argues: "The ALJ's reasons for rejecting treating physician Dr. Basi's opinion, do not

5   justify the lack of manipulative and attendance limitations in the RFC."  In particular, plaintiff

6   focuses on Dr. Basi's opinions concerning the limitations associated with flare-ups of his skin

7   condition.

8           On May 21, 2012, Dr. Basi completed a "Skin Disorder Medical Assessment

9   Form."  Dr. Basi opined: "unable to use hands during flares."  Regarding plaintiff's ability to

10   perform in a competitive job, the doctor stated that plaintiff was unable to perform fast-paced

11   tasks, such a working on an assembly line.  In this regard, the court notes that Dr. Basi did <u>not</u>

12   indicate that plaintiff was unable to perform routine repetitive tasks at a consistent pace,

13   suggesting that plaintiff <u>is</u> capable of such tasks.  Dr. Basi opined that plaintiff can grasp, turn,

14   twist with his hand about 30% of the time, engage in fine manipulation with the fingers about

15   30% of the time, and reach overhead with the arms about 50% of the time.  The doctor also

16   opined that plaintiff can lift 20 pounds frequently and 50 pounds occasionally.  Dr. Basi opined

17   that plaintiff would likely be absent from work "about once or twice a month" as a result of his

18   impairments.  The doctor references no objective findings in support of his assessment.

19           At the outset, the court agrees with defendant that Dr. Basi is not properly

20   considered a treating source because he did not provide plaintiff with frequent treatment or

21   develop an ongoing treatment relationship.  <u>See</u> 20 C.F.R.  § 404.1502.  In this case, the record

22   reflects that Dr. Basi treated plaintiff for only about one month.  Thus, Dr. Basi is not entitled the

23   deference generally afforded treating sources.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. In

24   any event, even if Dr. Basi can be considered a treating source, the ALJ properly discounted Dr.

25   Basi's opinions for the same reason.  <u>See</u> 20 C.F.R. § 404.1527(c)(2)(I), (ii) (noting that the

26   frequency of treatment and the length, nature, and extent of the treatment relationship are

1  relevant when weighing treating opinions).  Finally, the court finds that the ALJ correctly

2  afforded little weight to Dr. Basi's opinion because it is unsupported by any references to

3  objective medical findings.

4          **C.          Plaintiff's Credibility**

5          The Commissioner determines whether a disability applicant is credible, and the

6  court defers to the Commissioner's discretion if the Commissioner used the proper process and

7  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

8  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

9  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

10  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

11  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

12  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

13  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

14  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

15  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

16          If there is objective medical evidence of an underlying impairment, the

17  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

18  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

19  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

20          The claimant need not produce objective medical evidence of the
            [symptom] itself, or the severity thereof.  Nor must the claimant produce
21          objective medical evidence of the causal relationship between the
            medically determinable impairment and the symptom.  By requiring that
22          the medical impairment "could reasonably be expected to produce" pain or
            another symptom, the Cotton test requires only that the causal relationship
23          be a reasonable inference, not a medically proven phenomenon.

24          80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
            Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

25

26  / / /

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7  physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8  Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9  claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14    Regarding reliance on a claimant's daily activities to find testimony of disabling

15  pain not credible, the Social Security Act does not require that disability claimants be utterly

16  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

17  repeatedly held that the    ". . . mere fact that a plaintiff has carried out certain daily activities . . .

18  does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

19  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

20  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

21  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

22  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

23  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

24  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

25  activities are not easily transferable to what may be the more grueling environment of the

26  workplace, where it might be impossible to periodically rest or take medication").  Daily

1    activities must be such that they show that the claimant is ". . .able to spend a substantial part of

2    his day engaged in pursuits involving the performance of physical functions that are transferable

3    to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

4    before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

5    Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

6               As to plaintiff's credibility, the ALJ noted that plaintiff stated that, while he

7    stopped working in July 2010 due to a skin disorder, he was able to work in the past despite this

8    condition.  The ALJ also noted that plaintiff stopped working for reasons unrelated to his medical

9    condition.  Further, the ALJ commented on plaintiff's activities of daily living:

10               The claimant's activities of daily living are significant.  The claimant
               testified that he rides a bike to collect aluminum cans and hauls the cans in
11               a bag on his bike.  He also testified he does side jobs.  The claimant
               described to Dr. Kalman that his typical day includes getting food from 7-
12               11, visiting friends, going to the park, and checking in with his probation
               officer (Ex. 11F/3).  He reported that he is able to manage his own
13               transportation, care for his personal hygiene, and pay his own bills, but
               that he does not do his own cooking, shopping, or housekeeping (Ex.
14               11F/3).   The claimant earlier reported his activities to include personal
               care, preparation of simple foods, do laundry or help with dishes, walk,
15               ride a bike, or use public transportation, shop in stores, and handle his own
               finances (Ex. 6E).

16

17   The ALJ further sated:

18               The objective medical findings do not support the degree of limitation
               alleged.  The claimant does have a severe skin disorder with episodic
19               flares in his symptoms, but his condition has generally been treated on an
               outpatient basis with a regimen of topical medications and oral steroids.

20

21   Finally, the ALJ noted that plaintiff is not under the care of a mental health specialist and that the

22   record discloses no debilitating side effects of medication.  The ALJ concluded: "Consequently,

23   to the extent the claimant's allegations conflict with the residual functional capacity defined

24   herein, they are rejected."

25               Plaintiff argues:

26               Just as he did at step three and in the RFC, the ALJ failed to

11

consider the effect of Mr. Blankenship's flareups in the credibility determination.  The ALJ discounted Mr. Blankenship's credibility, citing to his daily activities despite Mr. Blankenship's repeated qualifications that the extent of daily activities depends on his flareups.

According to plaintiff, "the episodic nature of his impairment" was not considered as an "explanation for purported inconsistencies."  Plaintiff adds: "His daily activities by nature are not consistent because they depend on his flareups, as he clearly explained to Dr. Kalman, in the forms he filled out, and at the hearing."

The court finds no error in the ALJ's analysis.  As discussed above, the ALJ discounted plaintiff's credibility based on, among other reasons, evidence that, while plaintiff stated that he stopped working due to his skin condition, he was able to work in the past despite that condition and stopped working in 2010 due to incarceration not his skin condition.  These inconsistencies regarding plaintiff's stated reason for not working support the ALJ's adverse credibility determination.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 13) is denied;

2.      Defendant's cross-motion for summary judgment (Doc. 17) is granted; and

3.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  March 15, 2016


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE